Chris Wangsgard, USB #3375
Nicholas U. Frandsen, USB #12512
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
CWangsgard@parsonsbehle.com
NFrandsen@parsonsbehle.com
ecf@parsonsbehle.com
Attorneys for Plaintiff KARILYN FRAZIER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KARILYN FRAZIER,<br><br>Plaintiff,<br><br>vs.<br><br>WHOLE FOODS MARKET ROCKY MOUNTAIN/SOUTHWEST, L.P., a Texas limited partnership, dba WHOLE FOODS MARKET,<br><br>Defendant. | **COMPLAINT (JURY DEMAND)**<br><br>Case No. 2:16-cv-00059-DBP<br><br>The Honorable DUSTIN B. PEAD |

Plaintiff, Karilyn Frazier, by and through her counsel complains of Defendant, Whole Foods Market Rocky Mountain/Southwest, L.P, and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Karilyn Frazier, is a resident of the State of Utah and was a Utah resident at those times material to this Complaint.

2. Defendant, Whole Foods Market Rocky Mountain/Southwest, L.P., is a Texas limited partnership doing business in Utah as Whole Foods Market.

3. At those times material to this Complaint, Plaintiff was an employee of Defendant within the meaning of Title VII, 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e(f).

4. At those times material to this Complaint, Defendant was an employer within the meaning of Title VII, 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e(f).

5. Plaintiff alleges that Defendant's actions, as more particularly alleged herein, violated Title VII of the 1964 Civil Rights Act, as amended.

6. The Court has jurisdiction pursuant to the provisions of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.* and 28 U.S.C. § 1343.

7. Costs and attorneys' fees may be awarded pursuant to 42 U.S.C. § 2000e-5(k).

8. Plaintiff has exhausted administrative remedies, having filed a charge of discrimination and retaliation with the Utah Labor Commission, Antidiscrimination and Labor Division, and with the Federal Equal Employment Opportunity Commission ("EEOC") on January 5, 2015. Plaintiff obtained a right to sue letter from the EEOC dated October 28, 2015.

## FACTUAL ALLEGATIONS

### FIRST CAUSE OF ACTION
**(Discrimination Because of Race)**

9. Plaintiff was employed by Defendant on or about February 8, 2011 as a store marketing specialist, working at Defendant's Park City store.

10. Approximately in April 2013, Plaintiff applied for the position of store marketing specialist at Defendant's Trolley Square store.

11. Plaintiff was selected for the store marketing specialist position at Defendant's Trolley Square store.

12. Based on Plaintiff's successful performance, she was promoted to front-end team

leader at Defendant's Trolley Square store in Salt Lake City in April 2014.

13. Plaintiff's experience with Defendant was as a marketing specialist and she had not been trained for the front-end team leader position when she was promoted to that position in April 2014. Store manager, Casey Morton, and others assured Plaintiff that Defendant would provide her with training and mentoring sufficient to allow her to successfully perform her new duties as front-end lead.

14. Store manager, Casey Morton, was successfully providing the training and guidance Plaintiff needed, but he died unexpectedly on or about June 14, 2014.

15. Mr. Morton was not immediately replaced. Gary McClain at times acted as Plaintiff's supervisor, although he was not selected to replace Mr. Morton. A man named Tyler Lay also had some authority to direct Plaintiff.

16. Mr. McClain, Mr. Lay, and others failed to provide the training and leadership guidance which Plaintiff had been promised by Defendant.

17. Although Mr. McClain was aware Plaintiff had limited experience as front end manager, he repeatedly acted to undermine her success rather than assisting her.

18. During a period of approximately four weeks after Mr. Morton died, Mr. Morton's position was not filled. Instead, Defendant brought temporary managers to the Trolley Square store to fill in for Mr. Morton.

19. One of the temporary managers was a man named Brian, one was a woman named Carolyn, one was from a store in New Mexico, and one was from a store in Colorado.

20. During the period in which Plaintiff was supervised by these temporary managers, Mr. McClain undermined Plaintiff's ability to succeed as a manager by repeatedly arranging

meetings in which he unjustly criticized Plaintiff's performance. Mr. McClain did not engage in such conduct toward other Caucasian team leaders, including Barrie Mitchell, who was also an inexperienced team leader.

21. Over an approximate six-month period of time, Plaintiff received criticism, correction and discipline disproportionate to that which would have reasonably been appropriate.

22. Over an approximate six-month period of time, Mr. McClain and other supervisory employees he influenced treated Plaintiff more negatively than comparably situated Caucasian employees.

23. Plaintiff was the only team leader who was black.

24. Plaintiff was frequently criticized by Mr. McClain in front of co-workers and store customers. For example, Defendant wanted to get customers' emails, but recognized that customers did not want to be delayed as their purchases were being rung up and paid for. Plaintiff was directed not to have the cashiers for which she was responsible ask customers for their emails. Mr. McClain, in violation of store policy and without consulting Plaintiff, directed Plaintiff's cashiers to request emails, thus undermining Plaintiff's managerial effectiveness.

25. Other team leaders in the store, who were Caucasian, were not criticized by Mr. McClain in front of co-workers and store customers.

26. At various times, including, but not limited to, July 16, 2014, Plaintiff complained about how she was being treated by Mr. McClain. Plaintiff believed and asserted to store management that she was treated less favorably because of her race.

27. In August 2014, Plaintiff after making a comment in a team leader meeting was told to "be quiet" by Mr. McClain.

4832-1061-9180.v1

28. The other team leaders, who were not African American, were allowed to express their views in team leader meetings and elsewhere without the kind of antagonistic, humiliating treatment Plaintiff received.

29. When Mr. McClain witnessed Plaintiff and two other team leaders discussing an issue, regarding the problems resulting from the fact that prepared food products had been put on sale for a day as part of a promotion, but cash registers had not been reprogrammed to apply the sale prices issue, Mr. McClain falsely accused Plaintiff of wasting time. He then directed only Plaintiff to "get back to work." Mr. McClain did not direct the two other team leaders to "get back to work." The pricing issue was being discussed in Plaintiff's office and, was relevant to her responsibilities and needed to be resolved between Plaintiff's team and Barrie Mitchell, head of the prepared food team, thus Mr. McClain's reprimand of Plaintiff was pretextual and was motivated by her race.

30. Shortly thereafter, Mr. McClain called Plaintiff to his office to discipline her.

31. Mr. McClain did not call the other team leaders, who participated in the product pricing discussion to his office to discipline them.

32. Mr. McClain frequently undermined Plaintiff with regard to Plaintiff's decisions as a team leader regarding employee scheduling and customer campaigns.

33. Mr. McClain did not undermine other team leaders who were Caucasian.

34. Plaintiff, because she is black, was singled out and treated disparately from her fellow team leaders, who were Caucasian.

35. Plaintiff was investigated and suspended as part of Defendant's racially discriminatory treatment of her. The investigation and discipline administered to Plaintiff was

disproportionate to the magnitude of any mistakes she may have made and was administered because of her race and in retaliation for her complaints.

36. On or about December 26, 2014, Plaintiff complained about the poor treatment she had received from her associate front-end leader, Sean Rogan.

37. Defendant failed to respond to Plaintiff's complaints.

38. Defendant discriminated against Plaintiff in the terms and conditions of her employment because of race.

39. Defendant's unlawful discrimination has caused Plaintiff past and future economic loss, including lost wages, damage to her career and professional reputation, together with humiliation, and pain and suffering, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

40. Plaintiff hereby incorporates by reference as if fully set out herein each of the factual allegations set out in the preceding paragraphs of her Complaint.

41. On or about December 31, 2014, Plaintiff typed and delivered to Defendant a written complaint alleging racial discrimination. Her complaint alleged that, based on the way she had been treated throughout the period she had been a front end manager, she believed Gary McLain had a problem dealing fairly and in a nondiscriminatory manner, with African American employees.

42. On or about January 2, 2015, Plaintiff was called into the office of store manager, Beverly Stoddard, who stated that she felt threatened by the fact that Plaintiff had filed a written complaint of racial discrimination.

43. On January 5, 2015, Beverly Stoddard summoned Plaintiff to her office and told

4832-1061-9180.v1

her she was fired. Defendant stated it had fired Plaintiff because she had manipulated Defendant's gift card process, but Defendant's purported reason for firing Plaintiff was pretextual.

44. Title VII protects female employees, including Plaintiff, for engaging in opposition to unlawful discrimination.

45. Plaintiff engaged in a protected activity by opposing allegedly unlawful racial discrimination in Defendant's workplace by reporting, complaining about, and documenting racial discrimination.

46. Defendant's termination of Plaintiff in response to her opposition to, and complaining of Defendant's unlawful racial discrimination constitutes retaliation prohibited by Title VII.

47. Defendant's retaliatory discharge has caused Plaintiff past and future economic loss, including lost wages, damage to her career and professional reputation, together with humiliation, and pain and suffering, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendant as follows:

1. For judgment in Plaintiff's favor and against Defendant for discrimination on the basis of race and for retaliatory discharge in violation of Title VII.

2. For an award of back pay and front pay against Defendant in such amount as to be determined at trial.

3. For an award of compensatory damages against Defendant in an amount to be determined at trial, including damages for emotional distress.

4832-1061-9180.v1

4. For an award of reasonable attorneys' fees and costs.

5. For an award of pre-judgment and post-judgment interest as allowed by law.

6. For such other and further relief as the Court may deem just.

DATED this 25th day of January, 2016.

    /s/CHRIS WANGSGARD
Chris Wangsgard
Nicholas U. Frandsen
PARSONS BEHLE & LATIMER
Attorneys for Plaintiff KARILYN FRAZIER